UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BHARGAV KANANI and SHILPA DESAI, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) ) Case No. 4:04CV1728 JCH |
| FROST, RUTTENBERG & ROTHBLATT, P.C., and NOSHIR R. DARUWALLA, | ) ) ) ) ) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Counts II and III of Plaintiffs' First Amended Complaint, filed June 15, 2005. (Doc. No. 18). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, Plaintiffs Bhargav Kanani and Shilpa Desai filed their original Petition (hereinafter "Complaint") against Defendants Frost, Ruttenberg & Rothblatt, P.C., and Noshir R. Daruwalla, in the Circuit Court of the City of St. Louis, Missouri, on or about October 29, 2004. (Doc. No. 1, att. Exh. A). In their Complaint, Plaintiffs allege that on or about March 24, 1998, Plaintiffs agreed to purchase a 50% ownership interest in AMACK, LLC ("AMACK"), a Missouri limited liability company owning a motel in Desloge, Missouri, and a 50% ownership interest in AMIT, INC. ("AMIT"), a corporation operating the motel. (Compl., ¶ 5). In so doing, Plaintiffs became equal owners of both AMACK and AMIT with Arvind and Bharti Doshi. (Id.).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiffs further allege they engaged the accounting services of Defendants[1] on or about March 24, 1998, to act as their personal certified public accountant ("CPA"), and to handle the accounting and income tax matters with respect to the motel. (Compl., ¶ 6). According to Plaintiffs, at the time Plaintiffs hired Defendants, Defendants were already employed by the Doshis in both the above-mentioned capacities. (Id., ¶ 3).

Plaintiffs maintain that after sustaining consistent losses in the operation of the motel, Plaintiffs and the Doshis eventually sold the motel for a loss on or about May 22, 2002. (Compl., ¶ 7). Plaintiffs assert they subsequently engaged the services of a different CPA, and discovered, "irregularities in the accounting practices used by Defendant Daruwalla with respect to the accounting and tax treatment of their investment in the motel compared to that of the Doshis, including, but not limited to the following, to wit:

- a.) The initial cash capital investment of Plaintiffs was not matched by a similar cash capital investment of the Doshis.

- b.) In 1998 the Doshis received distributions from AMACK, while Plaintiffs received none.

- c.) The 2002 K-1's from AMACK, prepared by Defendants, allocated a deduction to the Doshis which was more than twice that allocated to Plaintiffs.

- d.) Other accounting practices of Defendants improperly favored the Doshis at the expense of the Plaintiffs."

(Compl., ¶ 8).

Plaintiffs' original Complaint consisted of two Counts, as follows: Count I–Negligence/Accounting Malpractice; and Count II–Conflicts of Interest. (Id.). Both Counts relied

---

[1] Defendant Frost, Ruttenberg & Rothblatt, PC, is a certified public accounting and consulting firm in Deerfield, Illinois. (Compl., ¶ 2). Defendant Noshir Daruwalla is a certified public accountant and Senior Vice-President of Frost, Ruttenberg & Rothblatt, PC. (Id., ¶ 3).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

on the same alleged wrongdoing on the part of Defendants. Defendants removed the action to this Court on December 13, 2004, on the basis of diversity jurisdiction. (Doc. No. 1).

On May 18, 2005, Defendants filed a Motion to Dismiss Count II of Plaintiffs' Complaint. (Doc. No. 11). While the motion was still pending, Plaintiffs filed a First Amended Complaint on June 1, 2005, in which they added a third Count for Breach of Fiduciary Duties. (Doc. No. 17, PP. 5-6).[2] As stated above, Defendants then filed the instant Motion to Dismiss Counts II and III of Plaintiffs' First Amended Complaint on June 15, 2005. (Doc. No. 18). Specifically, Defendants maintain Count II of Plaintiffs' First Amended Complaint must be dismissed for failure to state a claim, as there exists, "no cause of action for conflicts of interest, standing alone and that the Missouri legislature did not intend for a private cause of action for violation of the AICPA[3] code of professional conduct." (Defendants' Motion to Dismiss, ¶ 6). Defendants further maintain Count III of Plaintiffs' First Amended Complaint must be dismissed for failure to state a claim, as Plaintiffs have failed to support, "the existence of a fiduciary duty between accountants and their clients recognized by Missouri courts,..." (Id., ¶ 9). The Court will address Defendants' arguments in turn.

**STANDARD FOR MOTION TO DISMISS**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A cause of action should not be dismissed for failure to state a claim unless, from the face of the Complaint, it appears beyond a reasonable doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Jackson Sawmill Co., Inc. v. United States, 580 F.2d 302,

---

[2] Count III again is based on the same alleged wrongdoing on the parts of Defendants.

[3] AICPA is an acronym for American Institute of Certified Public Accountants.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

306 (8th Cir. 1978), cert. denied, 439 U.S. 1070 (1979). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (internal quotations and citation omitted).

## DISCUSSION

### I. Conflicts Of Interest

In Count II of their First Amended Complaint, Plaintiffs allege Defendants are liable for violating the provisions of the AICPA Code of Professional Conduct prohibiting operating under conflicts of interest, in that they: (1) failed to advise Plaintiffs their initial cash investment of $100,000.00 was greater than that of the Doshis, thereby causing economic damage to Plaintiffs; (2) failed to advise Plaintiffs that in 1998, the Doshis received distributions from AMACK when Plaintiffs did not, thereby causing economic damage to Plaintiffs; (3) prepared K-1 forms for AMACK in 2002, allocating a deduction to the Doshis more than twice that allocated to Plaintiffs, thereby causing economic damage to Plaintiffs; and (4) otherwise favored the Doshis over Plaintiffs in manners not yet determined, thereby causing economic damage to Plaintiffs. (First Amended Compl., PP. 4-5).

Missouri Revised Statutes Sections 326.250 to 326.331, are known as the "Missouri Accountancy Act." See Mo.Rev.St. § 326.250. Missouri Revised Statute Section 326.259 provides for the establishment of the "Missouri State Board of Accountancy." Id. Further, Section 326.271 provides that, "[t]he board shall promulgate rules of professional conduct for establishing and maintaining high standards of competence and integrity in the profession of public accounting." See Mo.Rev.St. § 326.271(2).

Pursuant to section 326.271, the board has promulgated a Code of Professional Conduct, codified at 4 CSR 10-3.010, which states in relevant part as follows:

- 4 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(1) A licensee shall comply with the professional standards of the most current American Institute of Certified Public Accountants (AICPA) Code of Professional Conduct,.... Said standards are incorporated by reference in this rule....

(2) As the AICPA Code of Professional Conduct is considered to be generally accepted standards of auditing and accounting, regardless whether a licensee is a member or non-member of the AICPA, the licensee shall comply with its provisions. When these pronouncements are written in terms of "should," a licensee shall follow the pronouncements in every applicable instance as though they were written in mandatory language,....

Id. The AICPA in turn contains the following provision regarding conflicts of interest: "A member should maintain objectivity and be free of conflicts of interest in discharging professional responsibilities. A member in public practice should be independent in fact and appearance when providing auditing and other attestation services." See AICPA, Section 55–Article IV. Plaintiffs thus assert that pursuant to these provisions, Plaintiffs are entitled to pursue Defendants' alleged conflicts of interest as a separate cause of action. (Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Counts II and III of Plaintiffs' First Amended Complaint, PP. 1-3).

In their Motion to Dismiss, however, Defendants note that courts which have directly addressed the question of whether an alleged violation of a rule of professional conduct, including allegations of conflict of interest, gives rise to a civil cause of action for damages arising from such a violation, have rejected the notion. (Defendants' Memorandum of Law in Support of their Motion to Dismiss Counts II and III of Plaintiffs' First Amended Complaint ("Defendants' Memo in Support"), PP. 3-5 (citations omitted)). For example, in Davis v. Findley, the Supreme Court of Georgia held as follows:

> Whether an attorney's alleged violation of an ethical duty imposed by statute or by the Code of Professional Conduct gives rise to a cause of action independent of the imposition of remedies provided by the bar rules has been considered in this state and in other jurisdictions....The better rule appears [to be]: [A]n alleged violation [of a rule of the Code of Professional Responsibility], *standing alone*, cannot serve as a legal basis to support

- 5 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> plaintiff's civil action seeking money damages....Other courts which have addressed this issue have held that a violation of those states' versions of the Code of Professional Responsibility does not give rise to a private cause of action for damages against attorneys.

Davis v. Findley, 422 S.E.2d 859, 860-61 (Ga. 1992), citing Hizey v. Carpenter, 119 Wash.2d 251, 830 P.2d 646 (1992); Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400 (Tenn. 1991); Terry Cove North, Inc. v. Marr & Friedlander, P.C., 521 So.2d 22 (Ala. 1988); Bob Godfrey Pontiac, Inc. v. Roloff, 291 Or. 318, 630 P.2d 840 (1981). See also Kirkland & Ellis v. CMI Corp., 1996 WL 559951 at *11 (N.D. Ill. Sept. 30, 1996) (citations omitted) ("Moreover, it is well-settled that there is no cause of action for the breach of professional responsibility or professional ethics in Illinois").

Upon consideration, the Court finds that, in Missouri, while "the statutes and rules of professional practice establish certain legislative and professional standards of care to be observed by accountants in the performance of their duties and may assist in the determination of the standard of reasonable care required of the accountant," they, "do not demonstrate that a civil action is created independently from an action for common law negligence." Aluma Kraft Mfg. Co. v. Elmer Fox & Co., 493 S.W.2d 378, 380-81 (Mo. App. 1973). Specifically, the Court notes that neither the Missouri Code of State Regulations, 4 CSR 10-3.010, nor the Missouri Accountancy Act, Mo.Rev.St. §§ 326.250 to 326.331, provides for a private cause of action for violations of its provisions. Further, the Missouri Supreme Court has held that, "[t]he creation of a private right of action by implication is not favored, and the trend is away from judicial inferences that a statute's violation is personally actionable." Shqeir v. Equifax, Inc., 636 S.W.2d 944, 947 (Mo. banc 1982). See also R.L. Nichols Ins., Inc. v. Home Ins. Co., 865 S.W.2d 665, 666-67 (Mo. banc 1993) (citation omitted) ("In Shqeir, the Court held that when the legislature has established other means of enforcement rather than by a private cause of action, the courts will not recognize a private civil

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

action unless it appears to be a clear implication that the legislature intended to create a private cause of action"). Thus, because the Missouri Accountancy Act provides a remedy for violations of its provisions, see Mo.Rev.St. § 326.298, and further, there is no clear implication the legislature intended to create a private cause of action for such violations, this Court finds no cause of action for "Conflicts of Interest" exists. See R.L. Nichols, 865 S.W.2d at 667. Count II is dismissed.[4]

## II. Breach Of Fiduciary Duty

In Count III of their First Amended Complaint, Plaintiffs allege Defendants are liable for breach of fiduciary duty, in that they: (1) failed to notify Plaintiffs their initial cash capital investment was greater than that of the Doshis, thereby causing economic damage to Plaintiffs; (2) failed to advise Plaintiffs that in 1998, the Doshis received distributions from AMACK when Plaintiffs did not, thereby causing economic damage to Plaintiffs; (3) prepared K-1 forms for AMACK in 2002, allocating a deduction to the Doshis more than twice that allocated to Plaintiffs, and failed to notify Plaintiffs thereof, thereby causing economic damage to Plaintiffs; and (4) failed to employ generally accepted accounting principles in otherwise favoring the Doshis over Plaintiffs, in manners not yet determined, thereby causing economic damage to Plaintiffs. (First Amended Compl., PP. 5-6).

In their Motion to Dismiss, Defendants assert Count III must be dismissed, as it fails to allege facts that satisfy the basic elements of a claim for breach of fiduciary duty. (Defendants' Memo in Support, PP. 9-10). Specifically, Defendants maintain Plaintiffs fail to establish the first element of

---

[4] The Court finds Plaintiffs' cited case, Lumbermens Mut. Cas. Co. v. Thornton, 92 S.W.3d 259 (Mo. App. 2002), distinguishable, as Plaintiffs there did not bring a separate cause of action for conflict of interest; rather, their suit alleged only negligence and breach of contract.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

a claim of breach of fiduciary duty, namely, that there existed a fiduciary relationship between Plaintiffs and Defendants. (Id.).[5]

Upon consideration, the Court will deny this portion of Defendants' Motion to Dismiss. While it may be true that, "not every act of unprofessionalism gives rise to a legal cause of action for breach of fiduciary duty," Block v. Razorfish, Inc., 121 F.Supp.2d 401, 403 (S.D. N.Y. 2000), several courts appear to have recognized that in certain limited circumstances, an accountant's misconduct may give rise to a claim for breach of fiduciary duty. Id., citing Lavin v. Kaufman, Greenhut, Lebowitz & Forman, 226 A.D.2d 107, 640 N.Y.S.2d 57, 57-58 (1st Dept. 1996); Kanev v. Turk, 187 A.D.2d 395, 590 N.Y.S.2d 211, 211 (1st Dept. 1992). Further, several cases decided under Missouri law contain at least an implication that, under certain circumstances, a claim of breach of fiduciary duty by a client against an accountant may stand. See, e.g., Deutsch v. Wolff, 994 S.W.2d 561 (Mo. 1999); Diversified Graphics, Ltd. v. Groves, 868 F.2d 293 (8th Cir. 1989). Thus, because Plaintiffs' claim of breach of fiduciary duty may represent an independent cause of action against Defendants under Missouri law, the Court finds it inappropriate to dismiss Count III of Plaintiffs' First Amended Complaint at this time.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Counts II and III of Plaintiffs' First Amended Complaint (Doc. No. 18) is **GRANTED** in part and **DENIED** in part.

---

[5] Breach of fiduciary duty is a claim arising in tort, and thus Plaintiffs must establish that a fiduciary duty existed between them and Defendants, that Defendants breached the duty, and that Defendants' breach caused Plaintiffs to suffer harm. Preferred Physicians Mut. Management Group v. Preferred Physicians Mut. Risk Retention, 918 S.W.2d 805, 810 (Mo. App. 1996).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Count II of Plaintiffs' First Amended Complaint (Doc. No. 18) is **GRANTED**, and Count II is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Count III of Plaintiffs' First Amended Complaint (Doc. No. 18) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Count II of Plaintiffs' Complaint (Doc. No. 11) is **DENIED** as moot.

Dated this 13th day of July, 2005.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com